United States District Court
Southern District of Texas
FILED

DEC 1 0 2015

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | |
| ROBERTO ENRIQUE RINCON- | § | |
| FERNANDEZ, | § | |
| ABRAHAM JOSE SHIERA- | § | **15 CR 654** |
| BASTIDAS | § | |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
### (Conspiracy – 18 U.S.C. § 371)

### Introduction

At all relevant times, unless otherwise specified:

1.     The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

2.     Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA and its subsidiaries and affiliates

were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.  PDVSA Services, Inc. was the U.S.-based affiliate of PDVSA located in Houston, Texas, that, at various times, was responsible for international purchasing on behalf of PDVSA.  Bariven S.A. was the PDVSA procurement subsidiary responsible for equipment purchases.  PDVSA and its wholly owned subsidiaries, including PDVSA Services, Inc. and Bariven S.A., (hereinafter collectively referred to as "PDVSA") were "instrumentalities" of the Venezuelan government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  PDVSA officers and employees were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

3.      PDVSA awarded contracts for energy services and equipment in a number of ways, including through a competitive bidding process.  One such competitive bidding process began with a PDVSA purchasing analyst assembling a bidding panel, which identified those companies that would be invited to submit bids in connection for a particular project.  PDVSA would then issue a request for quotation to the companies included on the bidding panel and those companies would in turn submit formal bids, from which a winner would be selected.

PDVSA also awarded sole source contracts, which were not subject to a competitive bidding process.

### The Defendants and Their Co-Conspirators

4.     Defendant **ROBERTO ENRIQUE RINCON FERNANDEZ** ("**RINCON**") was a U.S. lawful permanent resident and a resident of Texas, and controlled, together with others, a number of closely held companies, including several U.S. companies, many of which were based in the Southern District of Texas, that **RINCON** used to secure contracts with PDVSA.  **RINCON** was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

5.     Defendant **ABRAHAM JOSE SHIERA BASTIDAS** ("**SHIERA**") was a Venezuelan national who resided in Florida, and controlled, together with others, a number of closely held companies, including several U.S. companies, that **SHIERA** used to secure contracts with PDVSA.  **SHIERA** was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  **RINCON** and **SHIERA** worked together on a number of PDVSA contracts and contract bids.

3

6.     "Rincon Company 1," a company whose identity is known to the Grand Jury, was organized under the laws of Texas and headquartered in the Southern District of Texas.  Rincon Company 1 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Rincon Company 1 was controlled by **RINCON** and used by **RINCON** to secure contracts with PDVSA.

7.     "Rincon Company 2," a company whose identity is known to the Grand Jury, was organized under the laws of Texas and headquartered in the Southern District of Texas.  Rincon Company 2 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Rincon Company 2 was controlled by **RINCON** and used by **RINCON** to secure contracts with PDVSA.

8.     "Rincon Company 3," a company whose identity is known to the Grand Jury, was organized under the laws of Florida and headquartered in Florida. Rincon Company 3 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  Rincon Company 3 was controlled by **RINCON** and used by **RINCON** to secure contracts with PDVSA.

9.     "Rincon Company 4," a company whose identity is known to the Grand Jury, was controlled by **RINCON** and used by **RINCON** to secure contracts with PDVSA.

10.    "Shiera Company 1," a company whose identity is known to the Grand Jury, was organized under the laws of Florida and headquartered in Florida. Shiera Company 1 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  Shiera Company 1 was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

11.    "Shiera Company 2," a company whose identity is known to the Grand Jury, was organized under the laws of Florida and headquartered in Florida. Shiera Company 2 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  Shiera Company 2 was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

12.    "Shiera Company 3," a company whose identity is known to the Grand Jury, was organized under the laws of Florida and headquartered in Florida. Shiera Company 3 was thus a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).  Shiera Company 3 was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

13.   "Shiera Company 4," a company whose identity is known to the Grand Jury, was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

14.   "Shiera Company 5," a company whose identity is known to the Grand Jury, was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

15.   "Shiera Company 6," a company whose identity is known to the Grand Jury, was controlled by **SHIERA** and used by **SHIERA** to secure contracts with PDVSA.

16.   "Associate 1," an individual whose identity is known to the Grand Jury, was a U.S. lawful permanent resident and a resident of Texas and a relative of **RINCON**, who controlled, along with **RINCON**, several of the U.S. companies controlled by **RINCON**.  Associate 1 was thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

17.   "Associate 2," an individual whose identity is known to the Grand Jury, was a Venezuelan national who maintained a residence in Texas, and was employed by, or worked as an independent contractor for, **SHIERA** and assisted both **RINCON** and **SHIERA** in their business operations, including by assisting

6

RINCON and SHIERA and their companies, including their U.S.-based

companies, secure contracts with PDVSA.  Thus, Associate 2 was an agent of a

"domestic concern" as that term is used in the FCPA, Title 15, United States Code,

Section 78dd-2(h)(1).

### The Foreign Officials

18.    "Official A," an individual whose identity is known to the Grand Jury,

was at all relevant times employed by PDVSA, including as a buyer at PDVSA and

a supervisor of other PDVSA buyers.  Official A's job responsibilities included

assigning bidding panels to PDVSA buyers, including Official C and Official D,

who would then be responsible for selecting companies for the bidding panels,

which allowed those companies to submit bids on individual PDVSA projects.

19.    "Official B," an individual whose identity is known to the Grand Jury,

was at all relevant times employed by PDVSA, including as a purchasing analyst

for PDVSA.  Official B's job responsibilities included selecting companies for

bidding panels, which allowed those companies to submit bids on individual

PDVSA projects.

20.    "Official C," an individual whose identity is known to the Grand Jury,

was at all relevant times employed by PDVSA, including as a purchasing manager

and superintendent of purchasing at PDVSA.  Official C's job responsibilities

included selecting companies for bidding panels, which allowed those companies

7

to submit bids on individual PDVSA projects, and selecting which companies would win the economic portion of the bid process.

21.     "Official D," an individual whose identity is known to the Grand Jury, was at all relevant times employed by PDVSA, including as a buyer for PDVSA. Official D's job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects.

22.     "Official E," an individual whose identity is known to the Grand Jury, was at all relevant times employed by PDVSA, including as a purchasing manager at PDVSA. Official E's job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects.

23.     Official A, Official B, Official C, Official D, and Official E were each a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

### The Conspiracy

24.     Beginning in at least 2009 and continuing through at least 2014, in the Southern District of Texas, and elsewhere, the defendants,

**ROBERTO ENRIQUE RINCON FERNANDEZ**
**and**
**ABRAHAM JOSE SHIERA BASTIDAS**

did willfully and knowingly conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, that is:

a. to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of:  (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign

government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist **RINCON**, **SHIERA**, and their U.S. companies in obtaining and retaining business for and with, and directing business to, **RINCON**, **SHIERA**, their companies, and others, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a);

b.  while in the territory of the United States, willfully and corruptly to make use of the mails and means and instrumentalities of interstate commerce and to do any other act in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect

10

and influence acts and decisions of such government and agencies and instrumentalities, in order to assist **RINCON, SHIERA**, and their U.S. companies in obtaining and retaining business for and with, and directing business to, **RINCON, SHIERA**, their companies, and others, in violation of Title 15, United States Code, Section 78dd-3(a); and

c. to devise and intend to devise a scheme or artifice to defraud PDVSA and energy companies that could have performed services for PDVSA, and for obtaining money and property from PDVSA and energy companies that could have performed services for PDVSA by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

25.    The purpose of the conspiracy was for **RINCON, SHIERA**, and their co-conspirators, to enrich themselves by obtaining and retaining lucrative energy contracts with PDVSA through corrupt and fraudulent means, including by paying bribes to PDVSA officials.

## Manner and Means of the Conspiracy

26.     The manner and means by which **RINCON** and **SHIERA** and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

27.     **RINCON** and **SHIERA**, together with others, discussed how they would obtain and retain contracts with PDVSA by providing things of value to PDVSA officials.

28.     **RINCON** and **SHIERA**, together with others, paid bribes to PDVSA officials through the use of interstate and foreign wires in order to influence acts and decisions of the PDVSA officials in their official capacities and to induce the PDVSA officials to do and omit to do certain acts, including, but not limited to:

   a. assisting **RINCON**'s and **SHIERA**'s companies in winning PDVSA contracts;

   b. providing **RINCON** and **SHIERA** with inside information concerning the PDVSA bidding process;

   c. placing one or more of **RINCON**'s and **SHIERA**'s companies on certain bidding panels for PDVSA projects;

   d. helping to conceal the fact that **RINCON** and **SHIERA** controlled more than one of the companies on certain bidding panels for PDVSA projects;

e.  supporting **RINCON**'s and **SHIERA**'s companies before an internal PDVSA purchasing committee;

f.  preventing interference with the selection of **RINCON**'s and **SHIERA**'s companies for PDVSA contracts;

g.  updating and modifying contract documents, including change orders to PDVSA contracts awarded to **RINCON**'s and **SHIERA**'s companies;

h.  assisting **RINCON**'s and **SHIERA**'s companies in receiving payment for previously awarded PDVSA contracts, including by requesting payment priority for projects involving **RINCON**'s and **SHIERA**'s companies.

29.  **RINCON** and **SHIERA**, together with others, caused bribe payments to be wired from the bank accounts of **RINCON**, **RINCON**'s companies, and **SHIERA**'s companies to the bank accounts of PDVSA officials, their relatives, or other individuals or entities designated by the PDVSA officials who received the bribes.

30.  In addition to monetary bribes, **RINCON** and **SHIERA**, together with others, bribed PDVSA officials by providing things of value, including recreational travel, meals, and entertainment, in order to obtain and retain business on behalf of **RINCON**'s and **SHIERA**'s companies.

31.     **RINCON** and **SHIERA**, together with others, referred to the PDVSA officials who were assisting them in obtaining and retaining contracts with PDVSA in exchange for bribes as "aliados," which translates into English as "allies" or "allieds."

32.     **RINCON** and **SHIERA**, together with others, provided to certain PDVSA officials who were receiving bribes proposed bidding panel lists that would include more than one company controlled by **RINCON** or **SHIERA** to create the false appearance that the bidding process was competitive.

33.     **RINCON** and **SHIERA**, together with others, relayed to certain PDVSA officials who were receiving bribes instructions as to which company among the proposed bidding panel the officials should select as the winning bidder.

34.     **RINCON** and **SHIERA**, together with others, kept track of the amounts owed and paid to each PDVSA official based on the contracts that the PDVSA official had helped to award to one or more of **RINCON**'s and **SHIERA**'s companies.

35.     **RINCON** and **SHIERA**, together with others, attempted to conceal the fact that they controlled multiple companies contained on the proposed bidding panel lists provided to certain PDVSA officials who were receiving bribes, including by appointing nominal owners or managers for those companies.

14

36.     **RINCON** and **SHIERA**, together with others, attempted to conceal the bribes to certain PDVSA officials, which they referred to as "commissions," by creating false justifications for the bribes, including requesting or receiving invoices for equipment that was not provided and services that were never rendered in order to disguise the bribe payments to the PDVSA officials.

### Overt Acts

37.     In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

38.     In or around October 2009, **RINCON** and **SHIERA** reached an agreement to work together to pay bribes to PDVSA officials in order to secure lucrative energy contracts from PDVSA for **RINCON**'s and **SHIERA**'s companies.

39.     On or about October 8, 2009, Associate 2 sent an e-mail to other associates of **SHIERA** referring to a matrix "Roberto" [**RINCON**] had drafted in connection with PDVSA bidding.

40.     On or about October 22, 2009, Associate 2 sent Official C an e-mail in Spanish explaining the strategy for the PDVSA bidding process as it related to companies owned by **SHIERA**, stating that for instances where Shiera Company 1

15

would be invited to submit bids, Associate 2 and Official C needed to first ensure

that Shiera Company 1 would meet certain conditions and that Official C would be

the PDVSA buyer responsible for assembling the panel, and that, as translated into

English, "If that is the case, tell me so I can send you a panel of companies that I

know will not make an offer, or they will make offers higher than ours. It is

indispensable to have the complete description of the request to seek out pricing

beforehand. When starting the process, it is also indispensable that you require a

short submission offer timeframe (3days). Well buddy, I believe that if we follow

these strategies, that shit is ours."

  41. In or around early 2010, Associate 2 helped Official B to open a bank

account in Panama, in order to receive bribe payments outside Venezuela.

  42. On or about April 9, 2010, **RINCON** caused $100,000 to be

transferred from a bank account in the United States in the name of one of

**RINCON**'s companies to Official B's bank account in Panama.

  43. On or about April 12, 2010, **RINCON** caused $164,570.23 to be

transferred from a bank account in the name of one of **RINCON**'s companies to

pay off the balance of a mortgage loan in Official E's name for a residence in the

Southern District of Texas, in exchange for Official E's assistance in connection

with PDVSA contracts.

44.    On or about May 7, 2010, **RINCON** caused $135,429 to be transferred from a bank account in the name of one of **RINCON**'s companies to an account in the name of a close personal associate of Official E, but over which Official E held power of attorney, in exchange for Official E's assistance in connection with PDVSA contracts.

45.    On or about June 15, 2010, **SHIERA** sent Official C an e-mail containing information about how to open a bank account at a bank in Panama.

46.    On or about June 17, 2010, **RINCON** helped Official C open a bank account in the Southern District of Texas, into which bribes were paid.

47.    On or about May 26, 2010, approximately two weeks after PDVSA issued a $2,648,148.20 purchase order to Shiera Company 1 on which Official C was listed as the PDVSA buyer, Shiera Company 1 transferred $300,000 to Shiera Company 4.

48.    On or about June 23, 2010, **SHIERA** caused $100,000 to be transferred from a bank account in the name of Shiera Company 4 to Official C's bank account in the Southern District of Texas in exchange for Official C's assistance in connection with PDVSA contracts.

49.    On or about September 23, 2010, **RINCON** caused $100,000 to be transferred from a bank account in the name of Rincon Company 4 to Official C's

bank account in the Southern District of Texas in exchange for Official C's assistance in connection with PDVSA contracts.

50.     On or about October 18, 2010, approximately two weeks after PDVSA sent a wire transfer to Shiera Company 1 in the amount of $5,545,560.01, **SHIERA** caused $25,000 to be transferred from a bank account in the name of Shiera Company 4 to Official C's bank account in the Southern District of Texas in exchange for Official C's assistance in connection with PDVSA contracts.

51.     On or about January 28, 2011, **SHIERA** caused $15,000 to be transferred from a bank account in Panama in the name of Shiera Company 5 into a bank account in the Southern District of Texas held jointly in the name of Official E and a relative, in exchange for Official E's assistance in connection with PDVSA contracts.

52.     On or about June 6, 2011, **SHIERA** caused $15,000 to be transferred from a bank account in Panama in the name of Shiera Company 5 into a bank account in the Southern District of Texas held jointly in the name of Official E and a relative, in exchange for Official E's assistance in connection with PDVSA contracts.

53.     On or about August 5, 2011, approximately ten days after PDVSA issued a $7,729,756.78 purchase order to Rincon Company 3 on which Official C was listed as the buyer, Rincon Company 2 sent a sales order to Rincon Company

18

3 to provide Rincon Company 3 with substantially the same equipment Rincon Company 3 had agreed to provide to PDVSA in the purchase order referenced above, for a total price of $7,343,268.93.

54.     On or about September 29, 2011, **SHIERA** sent an e-mail to Associate 2, stating, as translated into English, "Don't forget to give me [Official A's] account statement."

55.     On or about October 27, 2011, Associate 2 sent an e-mail to **SHIERA** with the subject line, as translated into English, "Outstanding [commission] for [Official A]," and attaching an Excel spreadsheet listing numerous PDVSA contracts that had been awarded to **SHIERA**'s companies between September 1, 2010 to September 30, 2011 by various PDVSA buyers that were supervised by Official A, and listing, as translated into English, an "Outstanding commission" of $188,276.61 USD.

56.     On or about December 6, 2011, an associate of **SHIERA** sent an e-mail to Associate 2 in which he forwarded a $14,502.29 hotel reservation for Official D at the Fontainebleau Hotel in Miami Beach, Florida.

57.     On or about January 12, 2012, Associate 2 sent an e-mail to **SHIERA** and another associate of **SHIERA** attaching an invoice for whiskey that had been given to Official C with a notation, as translated into English, "with AS [**ABRAHAM SHIERA**] authorization."

58.     On or about January 17, 2012, the other associate replied to the e-mail referenced in Paragraph 57 above, stating, as translated into English, "Man, you shouldn't have Abraham's [**SHIERA**'s] name in the e-mail address, and do not mention mine either."

59.     On or about January 18, 2012, **SHIERA** responded to the e-mail chain referenced in Paragraph 58 above, stating, as translated into English, "authorized."

60.     On or about January 26, 2012, Associate 2 sent an e-mail to **SHIERA** and other associates of **SHIERA** whereby Associate 2 arranged for one of **SHIERA**'s companies to cover the cost of a hotel and rental car in Barcelona, Venezuela for Official D.

61.     On or about January 28, 2012, **SHIERA** responded to the e-mail referenced in Paragraph 60 above, and instructed Associate 2 to, as translated into English, "please do these things outside of accounting."

62.     On or about February 9, 2012, **RINCON** sent an e-mail to Official A, copying **SHIERA** and Associate 2, stating, as translated into English, "attached please find the Charge for Abraham's [**SHIERA**'s] company," and directing Official A to assign the bidding process to Official D.

63.     On or about March 1, 2012, Official C sent an e-mail to **RINCON** attaching panel lists for a number of bidding processes that were in the request for

quotation phase. Three of the proposed panels included Rincon Company 3 and another Rincon company. Another proposed panel included Shiera Company 2, Rincon Company 1, Rincon Company 2, and another Rincon company. Another proposed panel included Rincon Company 2, Rincon Company 3, and another Rincon company.

64.     On or about March 22, 2012, **SHIERA** sent an e-mail to Associate 2 and another associate of **SHIERA**, copying **RINCON**, responding to an e-mail chain about a turbogenerator process, stating that, as translated into English, "[Rincon Company 1] should win the process. According to what Roberto approved, the commission to [Shiera Company 1] is 5% of the purchase price. That is fair. Put this in the Synergy project report. RR [**ROBERTO RINCON**] pays the commissions to the allies."

65.     On or about March 27, 2012, **SHIERA** sent an e-mail to **RINCON** and an associate of **SHIERA**, copying Associate 2, stating, as translated into English, "According to what was agreed with Roberto [**RINCON**], his companies will excuse themselves from these two processes. From ours, [Shiera Company 1] wins both."

66.     On or about March 23, 2012, Official C issued an invoice from a company Official C co-owned with a relative to **RINCON** at Rincon Company 2,

billing $150,000 for purported services that were not actually performed, including "engineering services on drilling rig GP-20."

67.    On or about April 24, 2012, **SHIERA** sent an e-mail to Official A, **RINCON**, and Associate 2 instructing Official A to "assign" a particular PDVSA contract to Official D for the assembly of the bid panel and informing Official A that Shiera Company 3 "wins" the project.

68.    On or about April 27, 2012, **RINCON** caused $150,000 to be transferred from Rincon Company 2 to a bank account in the name of a company that Official C owned with a relative referencing the invoice referenced in Paragraph 66 above in exchange for Official C's assistance in connection with PDVSA contracts.

69.    On or about May 7, 2012, Official C e-mailed **RINCON**, forwarding a response from his bank that the April 27, 2012 wire transfer referenced in Paragraph 68 above had not been credited to Official C's account because the account number had been incorrect in the wire transfer documentation, and including the correct wire information.

70.    On or about May 8, 2012, **RINCON** caused $150,000 to be transferred from Rincon Company 2 to a bank account in the name of a company that Official C owned with a relative with the correct wire information contained in

Paragraph 69 above in exchange for Official C's assistance in connection with PDVSA contracts.

71.     On or about May 17, 2012, Official C sent an e-mail to **RINCON** and **SHIERA** attaching a list of various PDVSA contracts coming up for bid.

72.     On or about June 22, 2012, **SHIERA** sent an e-mail to Official C, instructing Official C to assign a particular bidding process to Official D.

73.     On or about June 22, 2012, Official C responded to the e-mail referenced in Paragraph 72 above, stating that Official C had already assigned the process to Official D, and noting, as translated into English, "I am waiting for you to send me the additional specifications of that case to submit them."

74.     On or about November 5, 2012, Rincon Company 3 sent PDVSA an invoice for partial payment on the purchase order referenced in Paragraph 53 above, based on supplying some of the equipment included in the purchase order.

75.     On or about December 18, 2012, the same day that PDVSA sent Rincon Company 3 approximately $331,246.01 as payment on two invoices, Rincon Company 3 sent $314,683.72 to Rincon Company 2.

76.     On or about December 19, 2012, Official C sent **RINCON** an e-mail attaching an invoice for $150,000 from a company Official C co-owned with a relative to **RINCON** at Rincon Company 2, billing $150,000 for purported

services that were not actually performed, including "Engineering Services Steem [sic] Generator Plants."

77.    On or about December 20, 2012, **RINCON** forwarded the December 19, 2012 invoice referenced in Paragraph 76 above to others at Rincon Company 2, including Associate 1, stating, as translated into English, "please proceed with the transfer."

78.    On or about December 21, 2012, **RINCON** caused $150,000 to be transferred from Rincon Company 2's bank account to a bank account in the name of a company that Official C owned with a relative in exchange for Official C's assistance in connection with PDVSA contracts.

79.    On or about February 20, 2013, **RINCON** sent Official C an e-mail stating, as translated into English, "send one for US $100,000.00."

80.    On or about February 28, 2013, Official C sent **RINCON** an e-mail attaching an invoice for $100,500, noting that the amount was, as translated into English, "to square away the H/H [hours per person] that I included in the former invoice." The invoice was from a company Official C co-owned with a relative to **RINCON** at Rincon Company 2 for purported services that were not actually performed, including "Engineering Services Steem [sic] Generator Plants."

81.    On or about March 1, 2013, **RINCON** caused $100,460 to be transferred from a Panamanian bank account in the name of one of **RINCON**'s

24

companies to a bank account in the name of a company that Official C owned with a relative in exchange for Official C's assistance in connection with PDVSA contracts.

82.     On or about March 26, 2013, Official C sent an e-mail to **RINCON**, stating, as translated into English, "Good day, Boss, I'm sending you the personal information of the passengers," and providing dates of birth, passport numbers, and passport expiration dates for Official C, Official C's wife, Official A, Official B, and three others for an April trip to Miami, Florida.

83.     On or about January 3, 2014, **SHIERA** caused $15,000 to be transferred from a bank account in Panama in the name of Shiera Company 6 into a bank account in the Southern District of Texas held jointly in the name of Official E and a relative, in exchange for Official E's assistance in connection with PDVSA contracts.

84.     On or about January 7, 2014, **SHIERA** caused $15,000 to be transferred from a bank account in Panama in the name of Shiera Company 6 into a bank account in the Southern District of Texas held jointly in the name of Official E and a relative, in exchange for Official E's assistance in connection with PDVSA contracts.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO – FIVE
### (Foreign Corrupt Practices Act – 15 U.S.C. § 78dd-2; 18 U.S.C. § 2)

85.     Paragraphs 1 through 23 and 25 through 84 are realleged and incorporated by reference as though fully set forth herein.

86.     On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendant,

**ROBERTO ENRIQUE RINCON FERNANDEZ,**

being a domestic concern and an officer, director, employee, agent, and shareholder of a domestic concern, and by aiding and abetting a domestic concern, did willfully use and cause to be used the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts

26

and decisions of such government and agencies and instrumentalities, in order to assist **RINCON**, **SHIERA**, and their U.S. companies in obtaining and retaining business for and with, and directing business to, **RINCON**, **SHIERA**, their companies, and others, as follows:

| COUNT | DATE | BRIBE PAYMENT |
|-------|------|---------------|
| Two | September 23, 2010 | $100,000 wire transfer from Rincon Company 4's bank account in Florida to Official C's bank account in the Southern District of Texas. |
| Three | April 12, 2011 | $200,000 check from **RINCON**'s bank account in the Southern District of Texas to a bank account in Florida in the name of a company owned by an associate of Official C. |
| Four | May 8, 2012 | $150,000 wire transfer from Rincon Company 2's bank account in the Southern District of Texas to a bank account in New York in the name of a company co-owned by Official C. |
| Five | December 21, 2012 | $150,000 wire transfer from Rincon Company 2's bank account in the Southern District of Texas to a bank account in Florida in the name of a company co-owned by Official C. |

All in violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

27

## COUNTS SIX – TEN
### (Foreign Corrupt Practices Act – 15 U.S.C. § 78dd-2; 18 U.S.C. § 2)

87.     Paragraphs 1 through 23 and 25 through 84 are realleged and
incorporated by reference as through fully set forth herein.

88.     On or about the dates set forth below, in the Southern District of
Texas and elsewhere, the defendant,

**ABRAHAM JOSE SHIERA BASTIDAS,**

being a domestic concern and an officer, director, employee, agent, and
shareholder of a domestic concern, and by aiding and abetting a domestic concern,
did willfully use and cause to be used the mails and means and instrumentalities of
interstate commerce corruptly in furtherance of an offer, payment, promise to pay,
and authorization of the payment of money, offer, gift, promise to give, and
authorization of the giving of anything of value to a foreign official, and to a
person, while knowing that all and a portion of such money and thing of value
would be and had been offered, given, and promised to a foreign official, for
purposes of: (i) influencing acts and decisions of such foreign official in his or her
official capacity; (ii) inducing such foreign official to do and omit to do acts in
violation of the lawful duty of such official; (iii) securing an improper advantage;
and (iv) inducing such foreign official to use his or her influence with a foreign
government and agencies and instrumentalities thereof to affect and influence acts

28

and decisions of such government and agencies and instrumentalities, in order to assist **RINCON**, **SHIERA**, and their U.S. companies in obtaining and retaining business for and with, and directing business to, **RINCON**, **SHIERA**, their companies, and others, as follows:

| COUNT | DATE | BRIBE PAYMENT |
|-------|------|---------------|
| Six | October 18, 2010 | $25,000 wire transfer from Shiera Company 4's bank account in Panama to Official C's bank account in the Southern District of Texas. |
| Seven | June 6, 2011 | $15,000 wire transfer from Shiera Company 5's bank account in Panama to a bank account in the Southern District of Texas held jointly by Official E and a relative. |
| Eight | August 6, 2012 | $120,000 wire transfer from Shiera Company 6's bank account in Panama to a bank account in Florida in the name of a company Official C co-owned with a relative. |
| Nine | January 3, 2014 | $15,000 wire transfer from Shiera Company 6's bank account in Panama to a bank account in the Southern District of Texas held jointly by Official E and a relative. |
| Ten | January 7, 2014 | $15,000 wire transfer from Shiera Company 6's bank account in Panama to a bank account in the Southern District of Texas held jointly by Official E and a relative. |

All in violation of Title 15, United States Code, Section 78dd-2, and Title 18, United States Code, Section 2.

## COUNT ELEVEN
### (Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))

89.     Paragraphs 1 through 23 and 25 through 84 are realleged and incorporated by reference as though fully set forth herein.

90.     From in or around 2009, and continuing through at least 2014, in the Southern District of Texas and elsewhere, the defendants,

**ROBERTO ENRIQUE RINCON FERNANDEZ**
**and**
**ABRAHAM JOSE SHIERA BASTIDAS**,

did knowingly conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, namely:

    a.  knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct or attempt to conduct such a financial transaction which in fact represented the proceeds of specified unlawful activity, knowing that the transaction is designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and

30

78dd-3, and wire fraud, Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1956(a)(1)(B); and

b.  to engage in a monetary transaction by, through and to a financial institution, in and affecting interstate and international commerce, in criminally derived property that was of a value greater than $10,000.00, that is, the deposit, withdrawal, transfer and exchange of United States currency, funds and monetary instruments, such property having been derived from specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, and wire fraud, Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

**Manner and Means of the Conspiracy**

91.    The manner and means by which **RINCON**, **SHIERA**, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

92.    **RINCON** and **SHIERA**, together with others, procured illegal proceeds from PDVSA by securing lucrative energy contracts from PDVSA through corrupt and fraudulent means, including by paying bribes to PDVSA officials.

31

93.     **RINCON** and **SHIERA**, together with others, assisted certain PDVSA officials in opening bank accounts, including bank accounts outside of Venezuela, for the PDVSA officials to receive bribe payments.

94.     **RINCON** and **SHIERA**, together with others, engaged in monetary transactions among their various companies designed to conceal the nature, source, and ownership of the proceeds of the specified unlawful activity.

95.     **RINCON** and **SHIERA**, together with others, transferred money among and between the bank accounts of their respective companies in order to conceal the nature, source, and ownership of bribe payments to PDVSA officials.

96.     **RINCON** and **SHIERA**, together with others, created false justifications for certain of the bribes, including invoices for services that were never performed, for the purpose of concealing and disguising the nature, source, and ownership of those bribe payments, which they referred to as "commissions."

97.     **RINCON** and **SHIERA**, together with others, directed the wire transfer of, and caused to be wired, bribe payments from bank accounts which were frequently in the name of companies other than the companies being awarded PDVSA contracts, for the purpose of concealing and disguising the nature, source, and ownership of the bribe payments.

98.     **RINCON** and **SHIERA**, together with others, directed bribe payments to be sent to various recipients other than the intended PDVSA officials,

including companies, relatives, friends, and close personal associates of the PDVSA officials, for the purpose of concealing and disguising the nature, source, and ownership of the bribe payments.

99.     **RINCON** and **SHIERA**, together with others, engaged in monetary transactions of a value greater than $10,000 using money procured through the corrupt and fraudulent scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWELVE – FOURTEEN
### (Money Laundering – 18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2)

100.   Paragraphs 1 through 23, 25 through 84, and 91 through 99 are realleged and incorporated by reference as though fully set forth herein.

101.   On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants,

**ROBERTO ENRIQUE RINCON FERNANDEZ
and
ABRAHAM JOSE SHIERA BASTIDAS,**

did knowingly conduct, and aid, abet, and cause others to conduct, and attempt to conduct, the following financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and that the financial transactions were designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, that is, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, and wire fraud, Title 18, United States Code, Section 1343, as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Twelve | October 20, 2011 | $5,700,800 wire transfer from Shiera Company 2's bank account in Florida to Rincon Company 2's bank account in the Southern District of Texas. |
| Thirteen | November 4, 2011 | $1,353,954.25 wire transfer from Shiera Company 2's bank account in Florida to Rincon Company 2's bank account in the Southern District of Texas. |
| Fourteen | January 17, 2012 | $1,479,716.03 wire transfer from Shiera Company 2's bank account in Florida to Rincon Company 2's bank account in the Southern District of Texas. |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS FIFTEEN – EIGHTEEN
### (Money Laundering – 18 U.S.C. § 1957; 18 U.S.C. § 2)

102.    Paragraphs 1 through 23, 25 through 84, and 91 through 99 are realleged and incorporated by reference as though fully set forth herein.

103.    On or about the dates set forth below, in the Southern District of Texas and elsewhere, the defendants,

**ROBERTO ENRIQUE RINCON FERNANDEZ**
**and**
**ABRAHAM JOSE SHIERA BASTIDAS,**

did knowingly engage, and aid, abet, and cause others to engage, and attempt to engage in the following monetary transactions, by, through, and to a financial institution, affecting interstate and foreign commerce, to wit: the deposit, withdrawal, transfer and exchange of United States currency, funds and monetary instruments, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, and wire fraud, Title 18, United States Code, Section 1343, as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| Fifteen | May 23, 2011 | $4,962,000 wire transfer from Rincon Company 1's bank account in the Southern District of Texas to a bank account in Switzerland in the name of Company Accountholder A. |

36

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Sixteen | May 24, 2011 | $15,000,000 wire transfer from Rincon Company 1's bank account in the Southern District of Texas to a bank account in Switzerland in the name of Company Accountholder B. |
| Seventeen | June 17, 2011 | $2,428,005 wire transfer from Rincon Company 1's bank account in the Southern District of Texas to a bank account in Switzerland in the name of Company Accountholder A. |
| Eighteen | January 17, 2012 | $3,097,527 wire transfer from Shiera Company 2's bank account in Florida to a bank account in Switzerland in the name of Company Accountholder C. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

104.   Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendants,

### ROBERTO ENRIQUE RINCON FERNANDEZ
### and
### ABRAHAM JOSE SHIERA BASTIDAS,

that in the event of conviction of any of the offenses charged in Counts 1 through 10 of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(1))

105.   Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendants,

### ROBERTO ENRIQUE RINCON FERNANDEZ
### and
### ABRAHAM JOSE SHIERA BASTIDAS,

that upon conviction of any of the offenses charged in Counts 11 through 18 of this Indictment, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

## Property Subject to Forfeiture

106.   Defendants are notified that the property subject to forfeiture includes, but is not limited to, the following property:

  a.   Bank Account of Company Accountholder A at Credit Suisse in Switzerland, with an account number ending in 6032;

  b.   Bank Account of Company Accountholder B at Credit Suisse in Switzerland, with an account number ending in 9852;

  c.   Bank Account of Company Accountholder C at Credit Suisse in Switzerland, with an account number ending in 2004; and

  d.   Sunseeker Manhattan 73 Motor Yacht, Serial Number GB-XSK 05811 J213, co-owned by **SHIERA**.

## Money Judgment

107.   Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable.

## Substitute Asset Provision

108.   Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

  a.   Cannot be located upon the exercise of due diligence;

39

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the

defendants up to the total value of such property pursuant to Title 21, United States

Code, Section 853(p), incorporated by reference in Title 28, United States Code,

Section 2461(c) and Title 18, United States Code, Section 982(b)(1).


A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON


KENNETH MAGIDSON
UNITED STATES ATTORNEY


BY: _____
JOHN P. PEARSON
DEPUTY CHIEF
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE


BY: _____
AISLING O'SHEA
JEREMY R. SANDERS
TRIAL ATTORNEYS


40