```
 1                    UNITED STATES DISTRICT COURT

 2                    SOUTHERN DISTRICT OF TEXAS

 3                         HOUSTON DIVISION

 4   UNITED STATES OF AMERICA         .
                                      .   Criminal Action
 5   VERSUS                           .   No. H-15-CR-654
                                      .
 6   ROBERTO ENRIQUE RINCON-FERNANDEZ,.   Houston, Texas
                                      .   June 16, 2016
 7                                    .   9:56 a.m.
                       Defendant.     .
 8   . . . . . . . . . . . . . . . . .

 9              EXCERPT OF TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE GRAY H. MILLER
10      REARRAIGNMENT - ALL PROCEEDINGS EXCLUDING SEALED SIDE BAR

11   APPEARANCES:

12   FOR THE UNITED STATES OF AMERICA:

13           Mr. Robert Searls Johnson
             Mr. John P. Pearson
14           Assistant United States Attorneys
             UNITED STATES ATTORNEY'S OFFICE
15           1000 Louisiana
             Suite 2300
16           Houston, Texas  77002
             713.567.9706
17           713.567.3300
             FAX:  713.718.3300
18           robert.s.johnson@usdoj.gov
             john.pearson@usdoj.gov
19
             Ms. Aisling O'Shea
20           Mr. Jeremy R. Sanders
             UNITED STATES DEPARTMENT OF JUSTICE
21           CRIMINAL DIVISION, FRAUD SECTION
             1400 New York Avenue, NW
22           Washington, DC  20005
             202.353.9795
23           202.616.2650
             aisling.o'shea@usdoj.gov
24           jeremy.sanders@usdoj.gov

25            PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
          TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION
```

```
 1                         APPEARANCES

 2                         (continued)

 3  FOR THE DEFENDANT:

 4          Mr. Samuel J. Louis
            Mr. Gary J. Siller
 5          STRASBURGER & PRICE
            909 Fannin Street
 6          Suite 2300
            Houston, Texas 77010-1036
 7          713.951.5604
            713.951.5600
 8          FAX:  713.951.5660
            sam.louis@strasburger.com
 9          gary.siller@clarkhillstrasburger.com

10          Mr. Paul R. Nalven
            ATTORNEY AT LAW
11          576 Fifth Avenue
            Suite 1002
12          New York, New York  10036
            212.616.5540
13          nalvenlaw@yahoo.com

14          Mr. James Lavine
            ZIMMERMANN, LAVINE & ZIMMERMANN
15          770 South Post Oak
            #620
16          Houston, Texas  77056
            713.552.0300
17          FAX:  713.552.0746

18  INTERPRETER PRESENT

19

20

21

22  COURT REPORTER:

23          GAYLE L. DYE, CSR, RDR, CRR
            515 Rusk, Room 8016
24          Houston, Texas  77002
            713.250.5582
25
```

<pre>
 1                    EXCERPT OF PROCEEDINGS

 2                       June 16, 2016

 3              THE COURT:  All right.  The Court calls Criminal Case

 4   15-654-1, United States of America versus Roberto Enrique

 5   Rincon-Fernandez.

 6                    Who is here for the Government?

 7              MR. JOHNSON:  Robert Johnson for the Government along

 8   with John Pearson, Aisling O'Shea, Jeremy Sanders.

 9              THE COURT:  Mr. Johnson, good morning to you.

10              MR. JOHNSON:  Good morning, sir.

11              THE COURT:  And for the Defendant?

12              MR. LOUIS:  Sam Louis here for the Defendant along

13   with Paul Nalven and Gary Siller.

14              THE COURT:  All right.  Good morning to you.

15              MR. LOUIS:  Good morning, your Honor.

16              THE COURT:  All right.  We're here initially on an

17   arraignment against Mr. Rincon-Fernandez on a criminal

18   information that the Government has filed.

19                    Mr. Rincon, you have a translator here this

20   morning.  Are you able to hear everything and understand

21   everything so far?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  All right.  What I need to advise you of

24   is that you have been charged in a criminal information by the

25   United States Government with three criminal violations, and I
</pre>

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   need to advise you of these charges and the potential penalty

2   for each of those charges.

3                  In Count 1 of the criminal information, you are

4   charged with conspiracy to violate the Foreign Corrupt Practices

09:57:55   5   Act.

6                  Do you understand the charge against you in Count

7   1 of the information?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right.  Now, if you are convicted of

09:58:07   10   that charge, the statutory maximum term of imprisonment is five

11   years and a fine of $250,000 or twice the gain or loss.

12                  Do you understand that's the maximum penalty for

13   Count 1 of the information?

14              THE DEFENDANT:  Yes, your Honor.

09:58:25   15              THE COURT:  The Court would also impose a $100 special

16   assessment that you would be required to pay.  And this count

17   carries a term of supervision of three years which is what

18   happens after you are released from prison, supervised release.

19                  Do you understand what supervised release is?

09:58:45   20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  All right.  In Count 2 of the indictment,

22   you are charged with violation of the Foreign Corrupt Practices

23   Act.

24                  Do you understand the charge in Count 2 of the

09:58:59   25   information?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  All right.  Now, if you are convicted, the

3   statutory maximum imprisonment for Count 2 is five years in

4   federal prison and a fine of $250,000 or twice the gain or loss.

09:59:14    5           Do you understand that's the maximum penalty for

6   Count 2?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  And again, there's three years of

9   supervised release after you are released from prison and a $100

09:59:25    10  special assessment.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  All right.  And in Count 3 of the

14  information, you are charged with making a false statement on a

09:59:38    15  federal income tax return.

16          Do you understand the charge against you in Count

17  3 of the information?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  Now, if you are convicted of

09:59:44    20  Count 3, the maximum penalty is three years in federal prison

21  and a fine of $250,000 or twice the gain or loss.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  All right.  And there's a period of one

10:00:01    25  year of supervised release for that offense and also a $100

1    special assessment.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  All right.  And counsel, is your client at

10:00:17    5    this time willing to waive the formal reading of the

6    information?

7              MR. LOUIS:  Yes, your Honor.  The information has been

8    explained to him in Spanish and -- the criminal information.

9              THE COURT:  All right.  Thank you, Mr. Louis.

10:00:26    10             You have certain rights, of course,

11   Mr. Rincon-Fernandez, including the right to remain silent, the

12   right to be represented by counsel in this case.  You have hired

13   these gentlemen to represent you as counsel.  If you did not

14   have the funds to hire an attorney on your own, the Court would

10:00:42    15   appoint an attorney for you.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.  Now, how do you plead to these

19   charges in the criminal information?

10:00:55    20             THE DEFENDANT:  Your Honor, good morning.

21             Guilty.

22             THE COURT:  All right.  So, you wish to plead guilty

23   to Counts 1, 2, and 3 of the criminal information; is that

24   correct?

10:01:21    25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  All right.  Before I can accept a plea of

2    guilty from you, I have to ask you certain questions that you

3    must answer under oath.  I need to make sure that your plea of

4    guilty is voluntary, entered into freely and without any

10:01:35  5    coercion.

6              I need to be sure that your plea is informed,

7    entered with a clear understanding of the consequences of

8    pleading guilty and with an understanding of all of the legal

9    rights that you give up when you plead guilty.  I also need to

10:01:49  10   be satisfied that you are, in fact, guilty of these charges in

11   the criminal information.

12             So, to the extent that you can, would you please

13   raise your right hand to be placed under oath.

14       (The Defendant was sworn.)

10:02:14  15       THE COURT:  All right, sir, thank you.

16             Do you understand that you have now been placed

17   under oath and that, if you answer any of my questions falsely,

18   your answers could later be used against you in another

19   prosecution for perjury?

10:02:24  20             Do you understand that?

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  All right.  It's very important that you

23   listen carefully to all of the questions that I ask you and that

24   you give me truthful answers to all of my questions.

10:02:33  25             Will you do that?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  All right.  Tell me your full name,

3  please.

4        THE DEFENDANT:  Roberto Enrique Rincon-Fernandez.

10:02:45  5        THE COURT:  How old are you, sir?

6        THE DEFENDANT:  55 years.

7        THE COURT:  And how far in school did you go?  How

8  much education do you have?

9        THE DEFENDANT:  University.

10:02:57  10       THE COURT:  All right.  And what is your degree in?

11       THE DEFENDANT:  A systems engineer and mechanical --

12  system analyst and mechanical engineer.

13       THE COURT:  Are you able to read and write the English

14  language?

10:03:14  15       THE DEFENDANT:  Medium.

16       THE COURT:  All right.  Are you more comfortable in

17  the Spanish language?

18       THE DEFENDANT:  Yes, your Honor.

19       THE COURT:  And has everything in this case been

10:03:24  20  explained to you in Spanish?

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  All right.  Have you ever been treated for

23  mental illness or psychological problems of any kind?

24       THE DEFENDANT:  No.  No, your Honor.

10:03:37  25       THE COURT:  Are you addicted to any drugs?

1              THE DEFENDANT:  No, your Honor.

2              THE COURT:  Are you sick today in any way that would

3    prevent you from understanding what is happening here?

4              THE DEFENDANT:  No, your Honor.

10:03:48   5              THE COURT:  Have you taken any medication, either

6    over-the-counter medication or prescription medication, in the

7    last few days or today?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Have you had any illegal drugs or alcohol

10:04:06  10   in the last few days or today?

11             THE DEFENDANT:  No, your Honor.

12             THE COURT:  Are you presently under the influence of

13   any drug or alcohol?

14             THE DEFENDANT:  No, your Honor.

10:04:14  15             THE COURT:  Have you had enough time to talk to your

16   attorneys in this case?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.  And are you satisfied with

19   your attorneys?

10:04:23  20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Do you need to ask your lawyers any

22   questions or get any advice from them before we go on?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  All right.  During the course of the

10:04:36  25   hearing if, at any point, you need to ask your attorneys a

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  question or get advice from them, you can do that prior to

2  answering my questions.

3                    Do you understand that?

4               THE DEFENDANT:  Yes, your Honor.

10:04:48   5      THE COURT:  All right.

6                    Mr. Louis, have you and your co-counsel had

7  enough time to investigate the law and the facts of your

8  client's case?

9               MR. LOUIS:  Yes, your Honor.  We have met with the

10:04:59  10  client many times and investigated the law and facts of this

11  case and made known to him the facts and the basis for the

12  charges, and we recommended that Mr. Rincon enter a plea of

13  guilty to the criminal information.

14               THE COURT:  All right.  And you're satisfied that your

10:05:16  15  client understands these charges against him in the

16  information --

17               MR. LOUIS:  Yes.

18               THE COURT:  -- and the range of punishment he faces in

19  the case?

10:05:22  20      MR. LOUIS:  Yes.  As he's indicated, we've gone over

21  the substance of the criminal information in Spanish.  We have

22  met with him on numerous occasions and discussed the law and

23  facts applicable to the charges and, based upon that

24  investigation, discussed with him his choices and made

10:05:42  25  recommendations to him based upon our investigation of his

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    entering a plea of guilty to the charges today.

2            THE COURT:  And during this time, has your client been

3    able to fully cooperate with you?

4            MR. LOUIS:  Yes, he has, your Honor.  He has had the

10:05:55   5    benefit of meeting with us and having a translator to discuss

6    with him the law and facts and circumstances of his case.

7            THE COURT:  All right.  And in your opinion, is he

8    mentally competent to enter a plea of guilty in this case?

9            MR. LOUIS:  Yes, he is, your Honor.  In my opinion, he

10:06:10   10    is mentally competent and has the capacity to understand the

11    full nature of the facts and circumstances of this case and this

12    investigation.

13            THE COURT:  All right.  Thank you, Mr. Louis.

14            The Court finds that the Defendant knowingly,

10:06:20   15    voluntarily, intelligently, and with the advice of his attorneys

16    seeks to enter a plea of guilty.

17            And Mr. Rincon-Fernandez, before I can accept a

18    plea of guilty from you, I need to make sure that you understand

19    all of the legal rights that you give up when you plead guilty.

10:06:38   20            First of all, you have the right, if you wish, to

21    plead not guilty to these charges; and if you plead not guilty,

22    then you would be entitled to have a trial on these charges.

23            Do you understand your right to have a trial?

24            THE DEFENDANT:  Yes, your Honor.

10:06:51   25            THE COURT:  And if you were tried, you would be tried

1  by a jury of 12 citizens from this district or by the judge

2  without a jury if everyone agreed to that.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

10:07:06  5    THE COURT:  And as I mentioned before, you're entitled

6  to be represented by counsel in this case.  You have retained

7  counsel.  However, if you did not have the funds to retain

8  counsel on your own, the Court would appoint an attorney to

9  represent you throughout this case, including trial.

10:07:21  10             Do you understand that?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Now, at this trial, the burden would be on

13  the United States to prove your guilt beyond a reasonable doubt

14  on each charge against you; and you would have no burden to

10:07:34  15  prove that you were innocent because, under our system of

16  justice, you are presumed to be innocent.

17              Do you understand the presumption of innocence?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Now, in order to prove your guilt beyond a

10:07:50  20  reasonable doubt, the Government would call witnesses; and they

21  would appear and testify here in open court under oath.  You and

22  your attorneys would see and hear all of these witnesses; and

23  then, your lawyers would be allowed to ask them questions on

24  your behalf.

10:08:06  25             Do you understand that?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And although you would have no obligation

3    to present any evidence or to call any witnesses, you would have

4    the right to do so if you wanted to; and that would include the

10:08:18   5    right to subpoena witnesses, that is, to require them to come

6    into court and testify on your behalf.

7               Do you understand that right?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  During this trial, you would also have the

10:08:32   10   right to remain silent because no one can compel you to be a

11   witness against yourself; and if you chose to exercise your

12   right to remain silent, it could not be held against you.  In

13   fact, you would have the right to have the jury instructed that

14   they could not use your silence as any evidence of your guilt in

10:08:49   15   this case.

16               Do you understand the right to remain silent?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Now, the fact that you chose to present

19   evidence of any kind at trial would never change the burden of

10:09:01   20   proof.  That burden would always remain on the Government until

21   the very end of the case.  And at this trial, you could not be

22   convicted unless every member of the jury found that you were

23   guilty beyond a reasonable doubt.  In other words, the verdict

24   would have to be unanimous by all 12 members of the jury.

10:09:20   25               Do you understand?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, if you plead guilty today and I

3   accept your plea, you understand that you are going to be

4   convicted of these charges and you will not have a trial?

10:09:32   5          Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Also, by pleading guilty today, you are

8   giving up the right to have the facts that are pleaded in the

9   information or that affect your sentence proven to a jury or

10:09:46  10   proven beyond a reasonable doubt.

11          Do you understand that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  All right.  You're also giving up a number

14   of arguments that you could have made later on to attack your

10:09:57  15   conviction or your sentence by pleading guilty today, arguments

16   that you could have made had you gone to trial and been

17   convicted rather than pleading guilty.

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor.

10:10:12  20          THE COURT:  For example, you could not come forward

21   later and argue that there were defects in the way that you were

22   investigated, arrested, or prosecuted in order to challenge your

23   conviction or your sentence.  You would give up the right to

24   claim that you were subjected to an illegal search and seizure,

10:10:31  25   that you gave an unconstitutional confession, or that your right

1    to a speedy trial was violated.

2              Now, this is not a complete list, just a few

3    examples; but I want you to understand that, if you plead guilty

4    today and I accept your plea, that you will not be able to raise

10:10:47   5    these or similar defenses later on to attack your conviction or

6    your sentence.

7              Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right.  So, you understand that, by

10:10:58  10    entering a plea of guilty today, if I accept your plea, that you

11    are giving up your right to a trial and all of these other legal

12    rights that I have just explained to you?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  All right.  Now, are you a citizen of the

10:11:12  15    United States?

16             THE DEFENDANT:  No.

17             THE COURT:  All right.  What country are you a citizen

18    of?

19             THE DEFENDANT:  Venezuela.

10:11:20  20             THE COURT:  Venezuela.  And you are here, as I

21    understand it, on a visa; is that correct?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  All right.  All right.  These are felony

24    offenses; and if you plead guilty today and I accept your plea,

10:11:36  25    this may lead to your deportation or exclusion from this country

1    or a denial of naturalization under federal law.

2                    Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  All right.  I do not know what immigration

10:11:49  5    consequences will attend to this, but it's important that you

6    are aware that there may be very serious immigration

7    consequences to your plea of guilty in this case.

8                    Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10:12:02  10            THE COURT:  All right.  Now, as I said before, this

11   case is before the Court on what is called a criminal

12   information.  And you have the right, if you wish, to request

13   and demand that you be indicted by a federal grand jury in this

14   case rather than proceeding on the basis of a criminal

10:12:24  15   information.

16                    Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.  Now, a federal grand jury

19   would consist of at least 16 but not more than 23 people; and 12

10:12:34  20   of those people would have to vote to return what's known as a

21   true bill against you before you could be prosecuted, that is,

22   12 members of the grand jury would have to believe that there is

23   a sufficient probable cause for you to have a trial.

24                    Do you understand that?

10:12:48  25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Now, it's my understanding that you wish

2     to waive your right to be indicted in this case and proceed on

3     the basis of this criminal information.

4               Is that correct?

10:13:00   5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And have you discussed this fully with

7     your attorneys?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  And have they answered all of

10:13:09  10    your questions about this?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  All right.  And do you believe it is in

13    your best interest at this point to waive indictment and proceed

14    on the basis of the information?

10:13:18  15         THE DEFENDANT:  Yes, your Honor.  Yes, your Honor.

16         THE COURT:  Mr. Louis.

17         MR. LOUIS:  Yes, your Honor.  The waiver of indictment

18    has been read to him.  He understands the full nature of the

19    waiver, and he has signed it.

10:13:32  20         THE COURT:  All right.

21               And this has been explained to you in Spanish; is

22    that correct?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And your lawyers have answered any

10:13:46  25    questions you may have about it; is that correct?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  I'm going to approve the

3    waiver of indictment.

4              All right, sir.  I need to go over one more time

10:13:59  5    the charges against you so that I can explain to you what the

6    Government has to prove with respect to each one of these

7    charges.

8              As I mentioned before, Count 1 of the information

9    charges you with conspiracy to violate the Foreign Corrupt

10:14:11  10    Practices Act; and the Court -- the Government has to prove the

11    following three things beyond a reasonable doubt for you to be

12    convicted of that offense:

13              first of all, that you and at least one other

14    person made an agreement to violate the Foreign Corrupt

10:14:26  15    Practices Act as charged in the information;

16              secondly, that you knew the unlawful purpose of

17    the agreement and that you joined in it willfully, that is, with

18    the intent to further the unlawful purpose;

19              and number three, that one of the conspirators

10:14:42  20    during the existence of the conspiracy knowingly committed at

21    least one of the overt acts described in the information in

22    order to accomplish some object or purpose of the conspiracy.

23              Do you understand that the Government has to

24    prove each of those three things beyond a reasonable doubt for

10:14:58  25    you to be convicted of the charge in Count 1 of the information?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  And I've already discussed the

3    maximum penalty with you.

4          With respect to Count 2 of the information, you

10:15:12   5    are charged with violation of the Foreign Corrupt Practices Act;

6    and in order for you to be convicted of that offense, the

7    Government has to prove the following seven things beyond a

8    reasonable doubt:

9          first of all, that you are a domestic concern or

10:15:27   10   an officer, director, employee, or agent of a domestic concern

11   or a stockholder thereof acting on behalf of such domestic

12   concern or aided and abetted a domestic concern;

13          secondly, that you acted corruptly and willfully;

14          third, that you made use of the mails or any

10:15:47   15   means or instrumentality of interstate commerce in furtherance

16   of an unlawful act under this statute or aided and abetted

17   another to do so;

18          four, that you offered, paid, promised to pay, or

19   authorized the payment of money or of anything of value or aided

10:16:04   20   and abetted another to do the same;

21          fifth, the payment or gift was to a foreign

22   official or to any person while the Defendant -- while you knew

23   that all or a portion of the payment or gift would be offered,

24   given, or promised, directly or indirectly, to a foreign

10:16:21   25   official;

1          sixth, that the payment was made for one of four

2     purposes:  to influence any act or decision of the foreign

3     official in his or her official capacity; to induce the foreign

4     official to do or omit to do any act in violation of that

10:16:36    5     official's lawful duty; to induce the foreign official to use

6     his or her influence with a foreign government or

7     instrumentality thereof to affect or influence any act or

8     decision of such government or instrumentality; or to secure any

9     improper advantage;

10:16:53   10          and number seven, the payment was made to assist

11     you or another whom you aided and abetted in obtaining or

12     retaining business for or with or directing business to any

13     person.

14          The Government has to prove each of those seven

10:17:08   15     things beyond a reasonable doubt for you to be convicted of the

16     offense that's alleged in Count 2 of the information.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  And there again, we have

10:17:21   20     discussed the maximum penalty for that.

21          Finally, with respect to Count 3 of the

22     information, you are charged with making a false statement on a

23     federal income tax return.  Now, in order for you to be

24     convicted of that offense, the Government has to prove the

10:17:34   25     following five things beyond a reasonable doubt:

1          number one, that you signed an income tax return

2     that contained a written declaration; that it was made under

3     penalties of perjury;

4          number two, that in this return that you falsely

10:17:47   5     stated that your total income was $266,070 during the year 2010;

6          third, that you knew the statement was false;

7          fourth, that the false statement was material;

8          and fifth, that you made the statement willfully,

9     that is, with the intent to violate a known legal duty.

10:18:07   10          Do you understand the Government has to prove

11     each of those five things beyond a reasonable doubt for you to

12     be convicted of this offense?  Do you understand?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  All right.  Now, I mentioned before that

10:18:21   15     each one of these counts carries a term of supervised release.

16     The first two carry a three-year term of supervised release, and

17     the last one carries a one-year term of supervised release.

18          Supervised release is what happens after you are

19     released from prison.

10:18:35   20          Do you understand what supervised release is?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  Supervised release carries with it certain

23     conditions that you must comply with after you are released from

24     prison.  If you fail to comply with the conditions of your

10:18:48   25     supervised release, then I can revoke your supervised release

1    and send you back to federal prison for up to two additional

2    years in prison without any credit for the time that you already

3    served on supervised release before you committed the violation.

4                    Do you understand that?

5    THE DEFENDANT:  Yes, your Honor.

6    THE COURT:  Also, if you violate the conditions and I

7    revoke your supervised release, then I can impose another term

8    of supervised release after you serve the jail time on the

9    supervised release violation.

10                   Now, if you are convicted of another crime, you

11   may be sentenced to additional years in prison and other

12   punishment depending upon what the crime is; and I can run the

13   jail time that I give you on the supervised release violation in

14   addition to and not concurrently with the jail time on the new

15   crime.

16                   Do you understand that?

17   THE DEFENDANT:  Yes, your Honor.

18   THE COURT:  All right.  Now, since you're not a

19   citizen of the United States, you may be deported after you are

20   released from prison; and your period of supervised release

21   would become inactive.  If you are deported, it is a condition

22   of your supervised release that you may not illegally reenter

23   the United States.

24                   Another condition is if you do come back to the

25   United States, legally or illegally, you must immediately report

1    to the probation department and tell them that you are back in

2    the United States.  Your supervised release at that time would

3    become active.

4              If you fail to report to probation or if you

10:20:18   5    reenter the United States illegally, that would be a violation

6    of the conditions of your supervised release; and if that

7    happens, I will revoke your supervised release and send you back

8    to prison on that charge.

9              Do you understand this?

10:20:32   10    THE DEFENDANT:  Yes, your Honor.

11    THE COURT:  Also, if you were to reenter the United

12    States illegally, the Government could charge you with a

13    separate felony of illegal reentry for which you may receive

14    substantial additional years in prison.

10:20:46   15              Do you understand?

16    THE DEFENDANT:  Yes, your Honor.

17    THE COURT:  All right.  Finally, there is no parole in

18    the federal prison system; and any prison sentence that you

19    receive in this case will not be shortened by parole.

10:20:58   20              Do you understand that?

21    THE DEFENDANT:  Yes, your Honor.

22    THE COURT:  All right.  So, you clearly understand the

23    nature of the charges against you in this criminal information

24    and the range of punishment that you face for each of these

10:21:13   25    charges; is that right?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right, thank you.

3               All right.  Counsel, it's my understanding that

4  you have entered into a written plea agreement --

10:21:24    5          MR. JOHNSON:  Correct, your Honor.

6          THE COURT:  -- in this case.

7               And this is being offered pursuant to Rule

8  11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure,

9  correct?

10:21:35   10          MR. JOHNSON:  Yes, your Honor.

11          THE COURT:  All right.  Mr. Johnson, will you please

12  summarize for the record the essential terms of the plea

13  agreement.

14          MR. JOHNSON:  Yes, your Honor.  The basic terms of the

10:21:42   15  plea agreement are that the Defendant pleads guilty to Counts 1,

16  2, and 3 of the criminal information; that the Defendant agrees

17  to waive appeal and collateral attack; and that the Defendant

18  agrees to forfeiture by imposition of a money judgment.

19               In turn, the Government agrees to a three-level

10:22:01   20  departure at the time of sentencing for the Defendant's full

21  acceptance of responsibility.

22          THE COURT:  All right.

23          MR. JOHNSON:  May we approach the bench at this time,

24  your Honor?

10:22:13   25          THE COURT:  Yes.  Yes, sir.

1          (Please see Docket Entry Number 165 for the **SEALED** side-bar

2    discussion.)

3          THE COURT:  All right.  Mr. Rincon-Fernandez, this

4    plea agreement of yours has been reduced to writing; and I

10:25:00   5    assume that you have gone over this with your attorneys.

6               Is that correct?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And has this all been explained to you and

9    read to you in Spanish?

10:25:12   10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  And did your attorneys answer

12    any questions that you have about this plea agreement?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right.  So, I need to tell you a

10:25:27   15    couple of things:  Number one, obviously, today, you will not

16    know what your sentence is going to be in this case.  What we're

17    doing today is you are deciding whether to plead guilty to these

18    three charges in the criminal information and sign this plea

19    agreement.  But you will not know what your sentence is going to

10:25:44   20    be in this case until some months later at the sentencing

21    hearing.

22               Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  And if the sentence that you receive later

10:25:53   25    on at the sentencing hearing turns out to be longer than you

1  expected to receive, you're not going to be able on that basis

2  to come back in here and withdraw this guilty plea and start

3  this process over again.  What we're doing here today with

4  respect to your pleas of guilty on these charges, this is final.

5                Do you understand that?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  Now, there are certain things that can

8  affect the length of your sentence in this case.  One of those

9  things is a prior criminal history, if you have one.  Depending

10  upon what crimes you may have committed in the past and when

11  they were committed, that can make the sentence in this case

12  longer.

13                Do you understand that?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Another thing that can affect the sentence

16  and make it longer is the amount of money involved.  In other

17  words, generally, the more money involved, the longer the

18  sentence.

19                Do you understand that?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  All right.  Now, this plea agreement that

22  you have entered into is an agreement with the prosecutors in

23  this case; and so, this plea agreement does not bind me or

24  affect me in any way when I determine your sentence later on at

25  the sentencing hearing.

1                    Do you understand that?

2               THE DEFENDANT:  Yes, your Honor.

3               THE COURT:  In other words, I will determine your

4    sentence completely independently of this plea agreement.

10:27:10   5                    Do you understand?

6               THE DEFENDANT:  Yes, your Honor.

7               THE COURT:  Now, one of the features of this plea

8    agreement is that you are agreeing to waive your rights to

9    appeal.  That means, essentially, that whatever the result is in

10:27:25  10   this case, you're going to be stuck with that result whether you

11   like it or not.

12                   Do you understand that?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  And if you don't like it, you're not going

10:27:34  15   to be able to take an appeal to the Court of Appeals.

16                   Do you understand that?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  On the other hand, the Government is not

19   giving up its rights to appeal in this case.

10:27:46  20                   Do you understand that?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  All right.  Now, if you plead guilty today

23   and I accept your plea, then your guilt is established; and we

24   move to the sentencing process.  And this is a summary of what

10:27:57  25   happens from this point on:  The probation department conducts a

1    presentence investigation; and then, they prepare a report to

2    assist me in sentencing.  And you can contribute to that report

3    by meeting with the probation department along with your

4    attorneys and providing them with information.

10:28:12   5        The Government does the same thing; and then, you

6    see the presentence report before I do; and you can object to

7    any errors that you think it contains.  The Government can do

8    the same thing, and the probation department then writes

9    responses to any objections that you have raised or that the

10:28:29  10   Government has raised.  And then, they send the entire packet of

11   information to me for my review prior to the sentencing hearing.

12        And at the sentencing hearing, everyone comes

13   back to Court just like we are this morning; and you and your

14   attorneys will have an opportunity to speak on your behalf

10:28:48  15   before I determine the sentence in your case.

16        Do you understand how this process works?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  All right.  Even though I do the

19   sentencing, I have no idea, as I sit here today, what sentence

10:29:00  20   you're going to receive at the sentencing hearing.  I do not

21   know how the Federal Sentencing Guidelines are going to work in

22   your case, and I will not know until after I review the

23   presentence report.

24        But I will decide all disputed factual and legal

10:29:14  25   issues in this case; and then, I will determine the appropriate

1  sentencing guideline range, that is, the range of months that

2  are recommended under the advisory guidelines for your sentence.

3              Do you understand this?

4              THE DEFENDANT:  Yes, your Honor.

10:29:29  5              THE COURT:  Now, in doing this, I do not use the

6  beyond a reasonable doubt standard that a criminal jury would

7  use; and the rules of evidence do not apply.  A sentencing

8  process is much more informal than a trial.

9              Once I determine what the appropriate sentencing

10:29:44  10  guideline range is for your case, I am not automatically

11  required to give you a sentence within that range.

12              Do you understand that?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  I may give you a sentence within that

10:29:59  15  range if I think that is the appropriate sentence, but I have

16  the ability to go up from the top of the guideline range.  And

17  in your case, I could give you a sentence all the way up to five

18  years in federal prison.

19              Do you understand that?

10:30:14  20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  I can also go below the sentencing

22  guideline range and give you a sentence less than recommended by

23  the advisory guidelines if I think that is the appropriate

24  sentence in your case.

10:30:30  25              Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, I assume that you have discussed with

3     your attorneys the Federal Sentencing Guidelines and how they

4     may work in your case.

10:30:39  5               Is that correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  Whatever your lawyers have

8     told you about the Sentencing Guidelines and how they might work

9     in your case -- maybe they've even given you some indication of

10:30:51 10    what they think your sentence might ultimately be -- none of

11    that is a promise or a guarantee of any kind from your attorneys

12    about your sentence.

13               Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

10:31:01 15    THE COURT:  It is simply their best estimate of what's

16    going to happen in this case based on their experience.

17               Do you understand?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  All right.  Now, finally, before I can

10:31:12 20    accept a plea of guilty from you, I have to make a determination

21    that there is a factual basis for your plea of guilty in this

22    case; and that factual basis is contained in your written plea

23    agreement beginning on page 11.

24               So, what I'm going to do at this point is I'm

10:31:33 25    going to ask the prosecutor to summarize the facts that he

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  believes the Government can prove about you in this case if we

2  had a trial.  And when he finishes, I'm going to ask you if

3  those facts are true.

4              Do you understand?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  All right.

7             Mr. Johnson.

8          MR. JOHNSON:  Yes, your Honor.

9             If this case were to proceed to trial, the

10  Government would prove with legal and competent evidence that

11  the Defendant was the owner of a number of energy companies,

12  including US companies, which supplied equipment and services to

13  Petroleos de Venezuela, SA, known commonly by the acronym PDVSA,

14  which is the Venezuelan state-owned and state-controlled oil

15  company, or to wholly-owned subsidiaries or affiliates thereof,

16  including Bariven, SA, which is the purchasing arm of PDVSA.

17             PDVSA, together with its subsidiaries and

18  affiliates, was responsible for the exploration, production,

19  refining, transportation, and trade in energy resources in

20  Venezuela and provided funding for other operations of the

21  Venezuelan government.

22             From in or about 2009 through in or about 2014,

23  Defendant agreed with his co-Defendant, Abraham Shiera, and

24  others to pay bribes and other things of value to PDVSA

25  officials in order to obtain or retain business with PDVSA.

1          Specifically, Defendant agreed to and did pay

2     bribes to PDVSA officials in exchange for their assistance to

3     Defendant, his companies, and his co-conspirators, including

4     Shiera's companies, in helping them win PDVSA contracts,

5     including providing Defendant and his co-conspirators with

6     inside information concerning the PDVSA bidding process, placing

7     more than one of Defendant's companies on certain bidding panels

8     for PDVSA projects and assisting Defendant's companies in

9     receiving payment for previously-awarded PDVSA contracts, among

10     other things.

11          Defendant understood that the bribe payments were

12     made in part to continue the relationship of the officials and

13     that the officials would continue to provide assistance in the

14     future with regard to future PDVSA contracts.  Defendant and

15     Shiera held several in-person meetings with PDVSA officials

16     where they discussed the bribe payments, bidding panels for

17     contracts that Defendant and Shiera wanted to win, upcoming

18     PDVSA contracts, and other inside information, and the

19     requirement that bribe payments had to be made to ensure payment

20     on the contracts already performed.

21          Defendant or others working at Defendant's

22     direction provided things of value to PDVSA officials, sometimes

23     at their request, in exchange for their assistance to

24     Defendant's companies, including money, real estate,

25     recreational travel, gifts, and meals.

1          Defendant or others working at Defendant's
2     direction agreed to pay PDVSA officials a percentage of the
3     value of contracts for which the officials provided assistance
4     to Defendant's companies, typically, ranging from one percent
10:34:34   5     for a lower-level buyer up to ten percent for more senior PDVSA
6     officials.  The actual bribe payments, however, did not
7     consistently match the agreed-upon percentages.
8          Defendant or others working at Defendant's
9     direction made the bribe payments by wiring money from various
10:34:52   10    bank accounts controlled by Defendant, his companies, and his
11    co-conspirators to various bank accounts in the United States
12    and abroad in the names of PDVSA officials, companies -- and
13    companies controlled by PDVSA officials, and family members,
14    friends, and associates of PDVSA officials.
10:35:09   15         Defendant and his co-conspirators made bribe
16    payments to a number of PDVSA buyers and their immediate
17    supervisors in exchange for their assistance to Defendant, his
18    companies, and his co-conspirators, including Shiera.  In
19    exchange for these bribe payments, the buyers would place
10:35:23   20    Defendant's companies and Shiera's companies on the bidding
21    panels for PDVSA contracts; and the supervisors would assign a
22    buyer selected by Defendant to the bidding process for certain
23    contracts on which Defendant and his co-conspirators wished to
24    bid.
10:35:36   25         Many of the panels included more than one company

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  controlled by Defendant or more than one company controlled by

2  Defendant or Shiera.  The panels also frequently included

3  companies that did not supply or manufacture or would not supply

4  the product PDVSA sought to purchase which were included on the

5  bidding panels in order to increase the chances that one of

6  Defendant's companies would win the contract.

7          Defendant, Shiera, and their co-conspirators

8  would often select and would communicate to the PDVSA officials

9  receiving the bribes the company that they wanted to win the

10  contract with PDVSA even if the equipment was actually being

11  supplied from another of Defendant's or Shiera's companies.

12          One of the buyers with whom Defendant made a

13  bribery agreement was referred to in the information as, quote,

14  Official C.  Defendant reached an agreement to pay Official C in

15  exchange for Official C's assistance in awarding business to

16  Defendant's companies.

17          On or about May 8, 2012, Defendant caused a wire

18  transfer in the amount of $150,000 to be sent from the bank

19  account of one of his companies based in the Southern District

20  of Texas to a bank account in the name of a company that

21  Official C co-owned with a relative.

22          Defendant also made bribe payments to

23  higher-level PDVSA officials in exchange for their assistance to

24  Defendant, his companies, and his co-conspirators, including

25  Shiera.  In exchange for these bribe payments, certain

1   high-level PDVSA officials would place Defendant's and Shiera's

2   companies on PDVSA-approved vendor lists, award contracts to

3   Defendant's and Shiera's companies and give payment priority to

4   Defendant's and Shiera's companies so that they would get paid

10:37:15   5   on contracts already performed ahead of other PDVSA vendors with

6   outstanding invoices.

7              In addition, Defendant willfully failed to report

8   foreign dividend income from a Venezuelan corporation owned by

9   Defendant on his 2010 federal income tax return as he was

10:37:36   10   required to do as a lawful permanent residence at that time.

11             On or about October 17, 2011, Defendant signed in

12   the Southern District of Texas and then caused to be filed with

13   the Internal Revenue Service a Form 1040 for the calendar year

14   2010 that was verified by written declaration that it was made

10:37:55   15   under the penalties of perjury for which Defendant did not, in

16   fact, believe to be true and correct as to every material

17   matter.

18             Specifically, Defendant's total reported income

19   on his 2010 Form 1040 was $266,070 despite the fact that, as

10:38:12   20   Defendant then knew and believed, the foreign dividends that he

21   received from a Venezuelan corporation owned by Defendant

22   represented income that he was required to report.  In total,

23   Defendant failed to report approximately $6,330,284 in

24   additional dividend income for the tax year 2010.

10:38:32   25             THE COURT:  Thank you, Mr. Johnson.

1          MR. JOHNSON:  Thank you, your Honor.

2          THE COURT:  Mr. Rincon-Fernandez, you've heard the

3   Government's attorney summarize the facts that he believes the

4   Government can prove about you in this case and which are

10:38:42   5   contained in your written plea agreement.

6                    Are those facts true?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  The Court finds that there is

9   a factual basis for the plea.

10:38:53   10          Sir, let me ask you at this time what is your

11   plea to the charges against you in Counts 1, 2, and 3 of the

12   information, guilty or not guilty?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  All right.  And do you state here in open

10:39:06   15   court under oath that each and every allegation in Counts 1, 2,

16   and 3 of the information are all true and correct?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And are you making this plea of guilty to

19   Counts 1, 2, and 3 freely and voluntarily?

10:39:23   20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Has anyone forced you, threatened you,

22   coerced you, or done any violence to you or any other person to

23   get you to plead guilty in this case?

24          THE DEFENDANT:  No, your Honor.

10:39:35   25          THE COURT:  Are you pleading guilty because of any

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    promise that's been made to you other than what is contained in

2    your written plea agreement?

3                THE DEFENDANT:  No, your Honor.

4                THE COURT:  Are you pleading guilty to protect someone

10:39:47  5    else?

6                THE DEFENDANT:  No, your Honor.

7                THE COURT:  Are you pleading guilty because you are

8    guilty and for no other reason?

9                THE DEFENDANT:  Yes, your Honor.

10:39:56  10                THE COURT:  Have you read or had read to you in

11    Spanish the terms of your written plea agreement and do you

12    understand it?

13                THE DEFENDANT:  Yes, your Honor.

14                THE COURT:  And are you prepared to sign the plea

10:40:07  15    agreement under oath at this time?

16                THE DEFENDANT:  Yes, your Honor.

17                THE COURT:  All right.  Let's get it executed if you

18    haven't already.

19                MR. LOUIS:  Your Honor, for the record --

10:41:00  20                THE COURT:  Yes, sir.

21                MR. LAVINE:  Jim Lavine, your Honor, L-a-v-i-n-e,

22    representing --

23                THE COURT:  The Defendant?

24                MR. LAVINE:  -- Mr. Fernandez-Rincon.

10:41:09  25                THE COURT:  Yes.

1          MR. LAVINE:  I'm on a ten-minute break from Judge

2    Hughes' court.  I think I need to sign some of these documents.

3          THE COURT:  All right.

4          MR. LOUIS:  Perfect timing.

10:41:27   5          MR. LAVINE:  Thank you, your Honor.

6          THE COURT:  And back to Judge Hughes.

7          MR. LAVINE:  And back to Judge Hughes.

8          THE COURT:  Good luck.

9          Mr. Rincon-Fernandez, I have been handed a

10:43:03   10    written plea agreement in your case; and I just want to confirm

11    with you on the record on page 22 of the plea agreement is that

12    your signature?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And on the last page, page 25, of the plea

10:43:19   15    agreement, is that also your signature?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Have you executed this plea agreement

18    freely and voluntarily after having had it fully explained to

19    you to your satisfaction by your attorneys?

10:43:32   20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Mr. Louis, do you know of any reason why

22    your client should not plead guilty to these charges?

23          MR. LOUIS:  I know of no meritorious defenses why

24    Mr. Rincon would not -- or should not enter a plea of guilty to

10:43:46   25    the charges.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE COURT:  All right.  Are you aware at this time of

2     any additional admonishments that I need to provide to your

3     client?

4          MR. LOUIS:  No, your Honor.

10:43:53   5          THE COURT:  Mr. Johnson?

6          MR. JOHNSON:  I'm not, your Honor.

7          THE COURT:  All right, thank you.

8               These are the Court's findings:  I find the

9     Defendant is clearly and mentally competent and capable of

10:44:02  10     entering an informed plea.  I find the plea is supported by

11     independent facts establishing all of the elements of the

12     offense and that the Defendant intended to do the acts he

13     committed.

14               I find the Defendant's plea of guilty is

10:44:13  15     voluntarily, freely, and knowingly made and that the Defendant

16     understands the nature of these proceedings and the consequences

17     of his plea of guilty and that this is an informed plea.

18               Therefore, sir, I accept your plea of guilty; and

19     I find you guilty as charged in Counts 1, 2, and 3 of the

10:44:29  20     information.

21               As I explained before, a presentence

22     investigation will now be conducted and a report will be

23     prepared to assist me in sentencing.

24               The sentencing hearing in this case is set for

10:44:42  25     the 30th of September at 10:00 a.m.; and Rhonda has a copy of

1  the order for presentence investigation with disclosure and

2  sentencing dates for both counsel.

3           Is there anything else from the Government,

4  Mr. Johnson?

10:44:53  5           MR. JOHNSON:  No, your Honor.

6           THE COURT:  All right.

7           Mr. Louis, anything else from the Defendant?

8           MR. LOUIS:  No, your Honor.

9           THE COURT:  All right.

10:45:11  10           That being the case, we're adjourned.  Thank you.

11       (Excerpt of proceedings concluded at 10:44 a.m.)

12

13

14

15

16              C E R T I F I C A T E

17

18     I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled matter, to

20  the best of my ability.

21

22  By: /s/*Gayle L. Dye*              *09-18-2018*

23       Gayle L. Dye, CSR, RDR, CRR      Date

24

25

Gayle Dye, CSR, RDR, CRR - 713.250.5582